2003 ME 32

**Linda LINGLEY et al.**

v.

**MAINE WORKERS' COMPENSATION BOARD**

**Docket No. .**

Supreme Judicial Court of Maine.

Argued: Oct. 9, 2002.
Decided: March 10, 2003.

---

James G. Fongemie, Esq. (orally), James W. Case, Esq., McTeague Higbee Case Cohen Whitney & Toker, P.A., Topsham, for plaintiffs.

Kevin M. Gillis, Esq (orally), Troubh, Heisler & Piampiano, P.A., Portland, for intervenor Workers' Compensation Coordinating Council.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Linda Lingley, Anita Ingersoll, Nancy Hine, Carolyn Bourgeois, and Maine AFL–CIO appeal from a judgment of the Superior Court (Kennebec County, *Studstrup, J.*), dismissing their claim as untimely under the Maine Administrative Procedure Act (APA).[1] 5 M.R.S.A. § 11002(3) (2002).[2] The Board asserts that the Superior Court erred by granting Appellants an extension of time to file their notice of appeal based on a finding of excusable neglect. The Appellants contend that the Superior Court correctly found excusable neglect, but assert that the Superior Court erred by finding that the Workers' Compensation Board's "4–0–3 vote" to extend benefits under 39–A M.R.S.A. § 213(4) (2001)[3] was "final agency action" pursuant to 5 M.R.S.A. § 8002(4) (2002).[4] The Appellants assert

---

1. The 2002 volume of the Revised Statutes is cited herein for applicable sections of the APA. Although the Board's vote took place in April 2001, the applicable statutes in effect at that time were not amended in the 2002 republication of the Revised Statutes.

2. 5 M.R.S.A. § 11002(3) provides, in pertinent part:

    **3. Petition filed.** The petition for review shall be filed within 30 days after receipt of notice if taken by a party to the proceeding of which review is sought. Any other person aggrieved shall have 40 days from the date the decision was rendered to petition for review. If the review sought is from an agency's failure or refusal to act, the petition for review shall be filed within 6 months of the expiration of the time within which the action should reasonably have occurred.

3. 39–A M.R.S.A. § 213(4) provides, in pertinent part:

    Effective January 1, 1998 and every January 1 thereafter, the 260–week limitation contained in subsection 1 must be extended 52 weeks for every year the board finds that the frequency of such cases involving the payment of benefits under section 212 or 213 is no greater than the national average based on frequency from the latest unit statistical plan aggregate data for Maine and on a countrywide basis, adjusted to a unified industry mix . . . .

4. 5 M.R.S.A. § 8002(4) provides:

    **4. Final agency action.** "Final agency action" means a decision by an agency which affects the legal rights, duties or privileges of specific persons, which is dispositive of all issues, legal and factual, and for which no further recourse, appeal or review is provided within the agency.

that they were entitled to six months in which to file a petition for review of the Workers' Compensation Board's failure to act pursuant to its obligations under 39–A M.R.S.A. § 213(4), and their petition was therefore timely. *See* 5 M.R.S.A. § 11002(3) (2002). We affirm the judgment of the Superior Court.

## I.

■ [¶ 2] The Superior Court dismissed Appellants' M.R. Civ. P. 80C petition on January 30, 2002. The Appellants filed their notice of appeal from the Superior Court's dismissal to us on February 26, 2002, after the appeal period had lapsed. Appellants petitioned the Superior Court for an enlargement of time to appeal pursuant to M.R.App. P. 2(b)(5), explaining that their counsel missed the filing deadline because he was unaware that M.R.App. P. 2(b)(3) was amended to shorten the appeal period from 30 days to 21 days effective January 1, 2002. The Superior Court found excusable neglect and granted the motion, stating that the change was recent, the delay was short and within the prior appeal period, and the right involved was very important.

[¶ 3] Whether excusable neglect exists is left to the sound discretion of the trial court. *Caron v. City of Auburn,* 567 A.2d 66, 67 (Me.1989). The trial court is in a superior position to evaluate the credibility and good faith of the party claiming excusable neglect. *Gregory v. City of Calais,* 2001 ME 82, ¶ 9, 771 A.2d 383, 386 (citations omitted) (finding excusable neglect when attorney relied on previously trustworthy and reliable paralegal who missed appeal filing deadline due to her illness). The standard for finding excusable neglect is strict, and can only be met when ex-

traordinary circumstances that work an injustice exist. *Id.* ¶ 7. The trial court nevertheless has a range of discretion to grant or deny a motion for enlargement of time by finding excusable neglect. *See Solomon's Rock Trust v. Davis,* 675 A.2d 506, 509 (Me.1996) (finding excusable neglect due to litigant's extenuating circumstances of spouse's sudden death and need for alternate counsel).

[¶ 4] When the Appellants filed their appeal, the amendment to M.R.App. P. 2(b)(3) that reduced the appeal period from 30 days to 21 days had recently become effective. The Superior Court found that the Appellants' notice of appeal was filed within the prior appeal period, the delay was very short, and the issue was significant and affected a large number of people. We note that M.R.App. P. 2(b)(5) authorizes the trial court "before or after the time has expired, with or without motion and notice, extend the time for filing those appeals otherwise allowed for a period not to exceed 21 days from the expiration of the original time prescribed by this subdivision." After being made aware of the change in the rule,[5] Appellants sought and obtained the extension of time, and filed their notice of appeal within 42 days of the entry of judgment. Under these unique circumstances, the Superior Court acted within its discretionary range. *See Solomon's Rock Trust,* 675 A.2d at 509.

## II.

■ [¶ 5] The Worker's Compensation Board, in 2001 as in the previous years, treated its obligation under 39–A M.R.S.A. § 213(4) as rulemaking. It proposed a rule extending incapacity benefits beyond

---

**5.** Appellate Rule 2(b)(3) governs the time for filing a notice of appeal and was based upon M.R. Civ. P. 73(a). Rule 73(a) had been in effect since our adoption of the Civil Rules on November 2, 1959, effective December 1, 1959.

the 260–week limitation period, which contained a finding that the frequency of cases involving benefit payments in Maine was no greater than the national average. The proposed rule fits within the definition of "proposed rule" in the Maine Administrative Procedure Act. *See* 5 M.R.S.A. § 8002(8–A) (2002). The Board followed the procedural requirements for rulemaking detailed in the APA, 5 M.R.S.A. § 8052 (2002), including the provision of notice and the preparation of a basis statement, and it held a public hearing on January 31, 2001, at which various people presented comments.

[¶ 6] Because the Board treated this process as rulemaking and because the process met the requirements of rulemaking, we analyze whether there is judicial review of the Board's failure to adopt the proposed rule. Title 5, section 8058(1) authorizes judicial review "of an agency's refusal or failure to adopt a rule where the adoption of a rule is required by law . . . ." 5 M.R.S.A. § 8058(1) (2002). This statute provides no limit on the time period that a person aggrieved by such refusal or failure may seek review in a declaratory judgment action pursuant to section 8058(1). Therefore, if indeed the Board was rulemaking, section 8058(1) authorizes judicial review, without a time limit, of the Board's failure to adopt the proposed rule, which would make the Superior Court's dismissal of the petitioner's request for review as untimely erroneous. *See id.* The issue, therefore,

is whether the Board was "required by law" to adopt the proposed rule.

[¶ 7] The substantive statute controlling benefit extensions, 39–A M.R.S.A. § 213(4), requires the Board to make an annual determination of whether the frequency of cases involving benefits is greater or less than the national average. Unless the Board finds that the frequency is not greater than the national average, it is not necessary, under section 213(4), for the Board to promulgate a rule. *See id.* The status quo will be maintained. The statute does not require the adoption of a rule regardless of whether or not the Board finds that the frequency is not greater than the national average. In other words, once the motion to enact the proposed rule was defeated, the Board was not required to issue a rule stating that benefits would not be extended. Because the Board was not required to promulgate a rule, the provisions of section 8058(1) are not applicable. *See* 5 M.R.S.A. § 8058(1). The Appellants, therefore, have no right to judicial review under section 8058(1).

■ [¶ 8] Insofar as the petitioners sought to challenge an implicit factual finding of the Board that the frequency of Maine cases paying benefits was greater than the national average, they would have had to file their petition pursuant to 5 M.R.S.A. § 11001(1) (2002)[6] because this affords the only means of judicial review from final agency action. Consequently,

---

6. 5 M.R.S.A. § 11001 provides:

    **1. Agency action.** Except where a statute provides for direct review or review of a pro forma judicial decree by the Supreme Judicial Court or where judicial review is specifically precluded or the issues therein limited by statute, any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter. Preliminary, procedural, intermediate or other nonfinal agency action shall be independently reviewable only if review of the final agency action would not provide an adequate remedy.

    **2. Failure or refusal of agency to act.** Any person aggrieved by the failure or refusal of an agency to act shall be entitled to judicial review thereof in the Superior Court. The relief available in the Superior Court shall include an order requiring the agency to make a decision within a time certain.

the review period in 5 M.R.S.A. § 11002(3) was applicable, giving the Appellants a forty-day time limit to file their appeal. The Appellants did not appeal within this forty-day period, thus we need not decide whether these petitioners would have had a right to appeal the Board's implied factual findings.

[¶ 9] The only remaining source of authority for review suggested by the Appellants is section 11001(2), which gives persons aggrieved by an agency's refusal or failure to act a right to judicial review. When the Board voted on the motion to adopt the proposed rule, the motion failed to pass for lack of sufficient votes. The Board reached a decision by defeating the motion to adopt the rule. The vote was an act—not a refusal or failure to act. It is true that the result was the same as a refusal to promulgate the proposed rule, but a refusal to take a requested action is not identical to a refusal to act.[7]

The entry is:

Judgment affirmed.

---

**7.** When an applicant applies to an agency for a permit or other approval, and the agency refuses to grant the permit or approval, that refusal is an action. If, however, the agency refused to take any action on the application, the agency has refused to act. A typical instance of agency refusal or failure to act is demonstrated by *Eastern Maine Medical Center v. Maine Health Care Finance Commission*, 601 A.2d 99 (Me.1992), in which the agency did not act on the plaintiff's application.